UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION
CIVIL ACTION NO.

STERLING ENGINEERING CORPORATION

v.

PIONEER MANAGEMENT SYSTEMS, INC.

COMPLAINT

CA 03-30306

### BACKGROUND

1. The Plaintiff Sterling Engineering Corporation (hereinafter referred to as "Sterling"), is a Connecticut Corporation with a principal place of business in Barkhamsted, Connecticut;

2. The Defendant Pioneer Management Systems, Inc. (hereinafter referred to as "Pioneer"), is a Massachusetts Corporation with a principal place of business at 330 Whitney Avenue, 8th Floor, Holyoke, Massachusetts, and is registered with the Secretary of State to do business in Connecticut.

### JURISDICTION

3. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Venue is proper in this judicial district under 28 U.S.C. § 1391(a), *inter alia,* as it is the district in which the Defendant has its principal place of business.

4. The Plaintiff Sterling is a manufacturing company engaged in the precision machining and tooling of metal parts and its employees have benefit packages.

### FACTS

5. The aforesaid benefit packages include a medical benefit plan qualified under the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA").

6.      The aforesaid medical benefit plan is self funded by Sterling and administered by the Defendant, Pioneer.

7.      The Defendant Pioneer processes and pays claims submitted by the individual employees of the Plaintiff Sterling and also obtains reinsurance for any of Sterling's employees medical claims that exceed $20,000.00.

8.      The reinsurance carrier at all relevant times was the Standard Security Life Insurance Company of New York and is referred to as a "stop loss carrier" as it stops the loss to Sterling for each claim at $20,000.00.

9.      On February 1, 2000, the Plaintiff Sterling entered into an Administrative Services Agreement with the Defendant Pioneer. A copy of which is attached hereto as "Exhibit A".

10.     The Defendant Pioneer agreed to administer the plan and to undertake the payment of claims and to convey the necessary and appropriate information to the excess risk carrier or "stop loss carrier."

11.     During the course of the year 2000, one of the Plaintiff's employees, Eric Pachulski's son, Matthew Pachulski, became ill and received treatment for his failing kidneys.

12.     The Defendant Pioneer administered and arranged for Sterling's payment of the many claims pertaining to Matthew Pachulski for the treatment necessitated by the failing kidneys causing the Defendant Pioneer to be fully aware of Matthew Pachulski's kidney condition and deterioration.

13.     At all times relevant herein in the years 1999 and 2000, Standard Security Life Insurance Company of New York was the excess coverage medical insurance carrier also known as the "stop loss carrier."

14.     On January 27, 2001, at the request of the Defendant Pioneer the Plaintiff Sterling signed an application for renewal of the Standard Security Life Insurance Company of New York's excess coverage policy. A copy of the renewal is attached hereto as "Exhibit B".

15.     The aforesaid renewal application had been prepared for the Plaintiff Sterling by the Defendant Pioneer at its office in Holyoke, Massachusetts, and was forwarded to the Plaintiff Sterling for signature.

16.    At that said time, the Plaintiff Sterling, through its Secretary, noted the absence of any disclosure of information concerning Matthew Pachulski and his failing kidneys. After an inquiry was made by Sterling, it was informed by the Defendant Pioneer not to disclose Matthew Pachulski's potential need for a kidney transplant. This information from the Defendant Pioneer was conveyed to the Plaintiff Sterling from its office in Holyoke, Massachusetts. A memo detailing the same is attached hereto as "Exhibit C".

17.    The Defendant Pioneer was aware of Matthew Pachulski's potential kidney transplant. On July 6, 2000, Pioneer issued a memo to Hartford Hospital guaranteeing payment for expenses of the transplant. A memo detailing the same is attached hereto as "Exhibit D".

18.    In March of 2001, Matthew Pachulski underwent a kidney transplant at Hartford Hospital, which hospital and medical expenses were not paid by Standard Security Life Insurance Company of New York for the reason of non-disclosure on the aforesaid renewal form.

19.    The Plaintiff's Sterling counsel received a letter on August 21, 2001 from the Defendant Pioneer informing him that the "stop loss carrier" was not going to cover the kidney claims for Matthew Pachulski because Matthew Pachulski's medical condition was not disclosed. A copy of that letter is attached hereto as "Exhibit E".

20.    The Plaintiff Sterling has paid $92,240.69 in claims for Matthew Pachulski's kidney condition transplant which should have been covered by the "stop loss carrier."

### FIRST COUNT: NEGLIGENCE

1-20.    Paragraphs 1 through 20 of the Background I hereby incorporated and made corresponding Paragraphs to this First Count as if fully set forth herein.

21.    The Defendant Pioneer failed to fulfill its promise to obtain reinsurance for one of the Plaintiff's Sterling employees and was careless and/or negligent in one or more of the following ways:

   a.    It improperly disclosed Matthew Pachulski's medical condition to the

3

       reinsurance carrier.

b.    It did not disclose the medical condition of Matthew Pachulski to the reinsurance carrier.

c.    It gave erroneous advice to the Plaintiff with regard to disclosing Matthew Pachulski's medical condition.

d.    It failed to make a diligent inquiry as to the proper method of disclosure to the reinsurance carrier regarding Matthew Pachulski.

e.    It issued a payment guarantee to Hartford Hospital for Matthew Pachulski's kidney transplant when it knew there was no coverage.

f.    It was fully aware of Matthew Pachulski's medical condition due to its processing of Matthew Pachulski's treatment for over one year prior to the transplant operation and did not disclose it.

g.    The omission of information from the renewal application for reinsurance was in fact a misrepresentation to the reinsurance carrier and it harmed the Plaintiff.

h.    Pioneer's omission of information on the insurance application to the reinsurance carrier was not acting in a commercial or reasonable manner causing losses to Sterling.

## SECOND COUNT: BREACH OF CONTRACT

1-21.   Paragraphs 1 through 21 of the First Count are hereby incorporated and made part of the corresponding Paragraphs to this Second Count as if fully set forth herein.

22.    The Defendant Pioneer specifically agreed to obtain reinsurance for the Plaintiff and it failed to do so for one of the family members of the Plaintiff's employee, namely, Matthew Pachulski.

23.    In its service contract, the Defendant Pioneer expressly agreed that it would "routinely convey necessary and appropriate information to the excess carrier" including "information regarding high cost claimants."

24. The Defendant Pioneer breached its contract with the Plaintiff Sterling all to the loss and detriment of the Plaintiff in that it did not convey the necessary information and gave misleading information to the Plaintiff Pioneer.

### THIRD COUNT:   UNFAIR AND DECEPTIVE TRADE PRACTICE PURSUANT TO M.G.L. c 93A

1-24. Paragraphs 1 through 24 of the First and Second Counts and are hereby incorporated and made part of the corresponding Paragraphs to this Third Count as if fully set forth herein.

25. On or about July 28, 2003, the Plaintiff, through their attorney, sent to the Defendant Pioneer by certified mail, return receipt request, postage prepaid, a written demand for relief pursuant to M.G.L. c 93A, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries suffered. A copy of this demand letter is attached hereto as "Exhibit F".

26. The Defendant Pioneer did not tender a reasonable offer of settlement in relation to the injury actually suffered.

27. The acts and practices of the Defendant Pioneer, by failure to negotiate in good faith and make a reasonable offer of settlement in violation of M.G.L. c 176D constitutes an unfair or deceptive act or practice pursuant to M.G.L. c 93A.

28. The actions of the Defendant Pioneer described above were performed willfully and knowingly.

29. As a result of the unfair or deceptive acts or practices of the Defendant Pioneer the Plaintiff Sterling has suffered harm and financial damage.

### FOURTH COUNT:   UNFAIR AND DECEPTIVE TRADE PRACTICE PURSUANT TO M.G.L. c 93A

1-29. Paragraphs 1 through 29 of the First, Second, and Third Counts are hereby

incorporated and made part of the corresponding Paragraphs to this Fourth Count as if fully set forth herein.

30. The Defendant's action as herein set forth constitutes a misrepresentation of pertinent facts for the purposes of pursuing a policy of insurance.

31. In addition, the Plaintiff's advice to the Defendant constituted a willful failure to implement reasonable standards for obtaining coverage by willfully and intentionally recommending that the insurance application be made as it was.

32. As a result of this unfair and deceptive trade practice by the Defendant Pioneer, the Plaintiff Sterling has suffered financial harm and damages.

## FIFTH COUNT: UNFAIR AND DECEPTIVE TRADE PRACTICE PURSUANT TO M.G.L. c 176D

1-32. Paragraphs 1 through 32 of the First, Second, Third, and Fourth Counts are hereby incorporated and made part of the corresponding Paragraphs to this Fifth Count as if fully set forth herein.

33. The Defendant's actions as herein set forth constitute a violation of M.G.L. c 176D and therefore are unfair and deceptive trade practices.

34. As a result of the aforesaid violation the Plaintiff has suffered harm and financial damage.

WHEREFORE, the Plaintiff Sterling demands judgment against the Defendant Pioneer as follows:

    (1) for compensation for injuries caused by the Defendant as described above;

    (2) for treble damages as provided by M.G.L. c 93A;

    (3) for treble damages as provided by M.G.L. c 176D;

    (4) for attorneys' fees, interest, and costs.

THE PLAINTIFF REQUESTS A JURY TRIAL ON ALL COUNTS SO TRIABLE

                                  Respectfully submitted,
                                  Sterling Engineering Corporation,
                                  By their attorney,

                                  _____
                                  ELIZABETH J. QUIGLEY, ESQ.
                                  Elizabeth J. Quigley & Associates
                                  27 South Street
                                  Pittsfield, MA 01201
                                  (413) 499-5476
                                  BBO # 408910

DATE: December 18, 2003

Case 3:03-cv-30306-MAP    Document 1    Filed 12/18/2003    Page 8 of 17

# ADMINISTRATIVE SERVICES AGREEMENT

THIS AGREEMENT made this 1st day of February 2000, by and between Sterling Engineering Corporation having a principal office and place of business at Route 44, Winsted, CT 06098 (hereinafter referred to as the "Employer") and Pioneer Management Systems, Inc., having a principal office and place of business at 330 Whitney Avenue, 8th Floor, Holyoke, MA 01040 (hereinafter referred to as "Pioneer"):

### WITNESSETH:

WHEREAS, the Employer has established a voluntary employees beneficiary association, trust account, or other means of providing certain medical, dental, vision care, pharmacy and/or disability expense benefits to Participating Employees and their Eligible Dependents; and

WHEREAS, the Employer is the sponsor of a Plan of benefits codified in a Plan Document (hereinafter referred to as the "Plan"), which may be amended from time-to-time; and

WHEREAS, Pioneer is willing to provide certain services with respect to the Plan for the Employer and on the Employer's behalf; and

NOW THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, the parties hereto agree as follows:

1. **Duties of Pioneer.** Pioneer shall, during the term of this Agreement, provide the following services in connection with the administration of the Plan:

   a. Adjudicate and process claims incurred by Plan Participants during the term of this Agreement for medical expenses and other benefits available under the Plan.

   b. Determine whether or not such claims are entitled to payment in accordance with the provisions of the Plan and accept or reject them accordingly. All claims in excess of $10,000 shall be routinely reviewed by a claim department supervisor before release. Pioneer shall also conduct random claim audits on 4% of all claims processed for Employer group.

   c. Pioneer will use "best efforts" to adjudicate and make payments of approved claims, to the extent funds are made available by the Employer, within (thirty) days of receipt as evidenced by Pioneer's date stamp. Claims that are incomplete or that require additional

investigation (e.g., involve coordination of benefits, subrogation or workers compensation) are not "clean" claims and may require additional time for processing. Pioneer is hereby authorized to make payments of approved claims with proper notification to the Employer of amounts paid.

*[handwritten margin note: Monthly basis only →]*

d. Maintain accurate records and by the 15th day of each month, furnish to the Employer a monthly and cumulative accounting of all cash disbursements for claims and amounts of all benefits paid during the preceding month. The Employer and/or its auditors and attorneys shall, upon reasonable advance notice, be entitled to review the accounting records of Pioneer with respect to the claims adjudication and administration of the Plan to any extent not prohibited by law. Such audits will be at the expense of Employer.

e. Cooperate with any actuary retained by the Employer to review the actuarial status of the Plan.

f. Arrange for the design, printing, and distribution of all forms mutually determined by the Employer and Pioneer to be required for the administration and payment of claims under the Plan, and distribute to the Employer and/or Participating Employees the following, as requested by the Employer: enrollment forms; benefits identification cards; claim forms; and other necessary forms and descriptive booklets. These forms shall be accompanied by written instructions. The Employer shall reimburse Pioneer for any costs in connection with forms or instruction not routinely provided by Pioneer.

g. Process and store claim forms in accordance with the provisions of the Plan.

h. Respond to all reasonable telephone, mail, or personal inquiries from participants with respect to the requirements, procedures and benefits of the Plan during normal business hours.

i. Maintain copies of the Plan Document and Summary Plan Description(s), trust agreements (if applicable), and all other documents relating to the Plan and this Agreement, as well as all claim forms submitted for payment, correspondence, and communications with the Employer and covered Participants.

j. Upon reasonable notice, attend meetings or presentations (within a fifty mile radius of Pioneer) as requested by the Employer and, in connection therewith, prepare and present relevant information and answer reasonable questions.

k. Agrees to make available a multi-specialty network of preferred providers which Plan Participants may access. It is acknowledged that certain of these preferred providers may from time-to-time not accept "new" patients, at their discretion, and that the network, while comprehensive, may not be inclusive of all provider/specialty types at all times.

l. Agrees to perform utilization management services for the purpose of determining medical necessity and appropriateness of medical services provided to Plan Participants.

m. Agrees to medically underwrite or otherwise evaluate Employees and their Eligible Dependents who apply for coverage after the initial eligibility period.

n. Agrees to administer benefits on the Employer's behalf for COBRA beneficiaries.

2. Compensation of Pioneer.

a. Payment for Administrative Services, including Claims Adjudication, Utilization Review and Case Management.

Pioneer shall receive as compensation for the services performed pursuant to this Agreement, a monthly fee per Participating Employee. This payment applies to all Participating Employees regardless of coverage status (Employee, Employee + Dependent, Employee + Family). The Employer is also obliged to pay a monthly billing fee of $50.00 which is charged to the group.

| Medical Coverage | Medical Management | PPO Access |
|---|---|---|
| $12.00 | $3.00 | $5.00 |

The service fee for administrative services, including claims adjudication, utilization review and case management is subject to change each year upon the Renewal Date February 1, 2001.

If Pioneer's service falls short of Employer's expectations in any given month, then Employer, at its sole discretion may deduct 10% of the administrative fees due to Pioneer for that month.

The annual administrative charge for Pioneer to administer continuation coverage under the provisions of the Consolidated Omnibus Budget Reconciliation Act (COBRA), as amended, and the Health Insurance Portability and Accountability Act (HIPAA) is $1,250.00 annually. This annual fee is payable on or before the Effective Date of this Agreement. In addition, the monthly fees for network access, administrative services, including claims

adjudication, utilization review and case management is also charged to the Employer on behalf of COBRA beneficiaries.

Should the Employer request additional reports, utilization management services (including the mailing of letters, EOBs, or other correspondence to parties not usually copied), customized identification claim forms, or make any type of "special request" agreed to by Pioneer, then the Employer is solely responsible for any associated costs.

When Pioneer procures a service on behalf of Employer and the cost of such service is the responsibility of the Employer under the terms of this Agreement (i.e. service is for the exclusive benefit of the plan, or is to accommodate a "special request") Employer agrees to pay the reasonable cost billed by any vendor selected by Pioneer. Employer may, however, prior to the procurement of such service, instruct Pioneer, in writing, to utilize a particular vendor.

    b.    **Payment of Claims Incurred Prior to Effective Date of this Agreement.** The terms of this Agreement require that Pioneer adjudicate claims incurred on or after the effective date.

Should the Employer request reports not usually provided regarding claims expenditures or utilization, and such reports are available from Pioneer, they will be provided at a cost of $350 per report.

    c.    **Responsibilities for Conveying Information to Other Insurers and Service Providers.** Pioneer will routinely convey necessary and appropriate information to the excess risk carrier (e.g., enrollment information, information regarding high-cost claimants, etc.) In addition, Pioneer will routinely transmit enrollment/disenrollment and other eligibility information on the Employer's behalf to a prescription drug card vendor, if applicable.

If the Employer wants Pioneer to transmit enrollment/disenrollment and other eligibility information to any other vendor, insured or benefits provider identified by the Employer, (usually a provider of dental or disability insurance) such request must be made in writing to Pioneer. The charge for this service to the Employer by Pioneer is $.75 per month per participating employee for each vendor, insurer or benefits provider being provided with enrollment/disenrollment information.

Pioneer is not, under any circumstances, responsible for the actions or inactions of any other vendor or party and the Employer agrees to hold Pioneer harmless for such acts or omissions, to the extent permitted by law and providing that Pioneer has fulfilled its contractual obligations.

    3.    **Subrogation.** In consideration of any payment made by or on behalf of the Employer to an Employee or on an Employee's behalf pursuant to the terms of the Plan, the Employer is subrogated to the

Employee's rights, claims, interest, and rights of action against any third party that may be liable to the Employee, in the amount and to the extent of any payments so made.

The Employer authorizes Pioneer to sue, compromise, or settle in the Employer's name any such right, claim interest, or right of action. Any sums recovered by Pioneer, either by judgment, settlement or other compromise, shall be paid to the Employer less a reasonable attorney's fee, if incurred, not to exceed thirty-three and one-third percent (33 1/3 %) percent of the amount recovered and an administration fee, equal to five percent (5%) of the amount recovered, to Pioneer. Pioneer shall not be required to make any such claim and makes no guarantee as to the amount of recovery, if any.

4. **Claim Audits.** Employer authorizes Pioneer to send non-PPO hospital claims in excess of $10,000 to an outside claims review organization for auditing. Any savings realized as a result of this service, e.g. from the discovery of incorrect or unsubstantiated charges, or from a negotiated reduction in the claim amount, shall be credited to the Employer's claim account, less the audit fee which shall not exceed 50% of any documented savings. Claims shall be sent to a review organization at the discretion of Pioneer. Pioneer is under no obligation to send any claim to an outside review organization, and makes no guarantee of savings.

5. **Insurance.** To protect the Plan, the Employer and Plan Participants from the negligence or wrongdoing of Pioneer or its employees, Pioneer shall maintain, at its own expense, the following insurance coverage: a) administrator's liability coverage (inclusive of claims processing and utilization review activities); and b) a fidelity bond in the form of Blanket Bond Coverage, insuring against the criminal or fraudulent acts of Pioneer's employees. The limits of both forms of coverage shall be reasonably related to the volume of claims administered by Pioneer.

6. **Term and Termination.** The initial term of this Agreement ("Initial Term") shall be twelve months, beginning on February 1, 2000 and shall continue until January 31, 2001. Thereafter, this Agreement shall be automatically renewed for additional periods of one (1) year beginning February 1, 2001 (each a "Renewal Term") unless either party shall give the other party written notice of non-renewal at least sixty (60) days prior to the end of the Initial Term or of any Renewal Term. Administrative Fees are subject to change, after the initial rate guarantee, at the beginning of any Renewal Term. Either party may terminate this Agreement for non-performance or breach of any of the terms of this Agreement upon thirty (30) days notice to the other party; provided, however, that the party alleged to be non-performing or in breach shall have fourteen (14) business days after receipt of notice thereof to cure said non-performance or breach, and in said event, this Agreement shall remain in full force and effect. Pioneer may resign immediately if Employer fails to satisfactorily provide funds to pay approved unpaid claims within ten (10) business days of notice thereof by Pioneer.

7.  **Single Source of Coverage Information.** Only person(s) duly authorized in writing by Employer (and Pioneer, its officers, agents or employees), shall be permitted to determine or comment upon the coverage provisions of the Plan. All day-to-day issues and questions relating to coverage eligibility, (benefits, etc.) shall be referred to Pioneer. Pioneer shall not be responsible or in any way liable for the consequences of any written or verbal descriptions, summaries, opinions, comments, or other information, whether or not relating to Plan coverage or eligibility, concerning the Plan or related documents made, prepared or given by unauthorized persons.

8.  **Funding.** Pioneer shall have no responsibility or liability for the adequacy or sufficiency of funds to pay Plan benefits. Pioneer shall pay claims for the Employer with respect to said Plan only to the extent of funds made available by the Employer or the Plan, and then only while so authorized by the Employer. Pioneer and the Employer explicitly agree and affirm that the Employer is the Fiduciary of the Plan and to the extent permitted by law, Pioneer is not a Fiduciary and has no Fiduciary responsibility with respect to said Plan. This provision shall not be construed, however, to excuse Pioneer from its responsibility in carrying out its obligations under this Agreement. It is likewise specifically acknowledged by Employer that Pioneer is not an actuary nor is Pioneer responsible for furnishing actuarial advice, information, or services to the Plan either directly or indirectly. This provision may be disclosed by Pioneer in any communication whether oral or written, including, without limitation, periodic statements to either the Employer or its employees. Pioneer will, however, provide Employer with "working rates" to be used for COBRA billing purposes.

9.  **Additional Payments to Claimants.** The Employer may, by written notice to Pioneer signed by an authorized officer of the Employer, instruct Pioneer to pay claims not approved by Pioneer or eligible for reimbursement according to the governing Plan Document upon the condition that such instruction expressly releases Pioneer from any liability in connection therewith and expressly acknowledges that such claims are not being applied toward any stop loss policy which may be in effect.

10. **Acknowledgment of Plan Responsibility and Exculpation.** The Employer acknowledges that it has exclusive responsibility for the design and funding of the Plan, but acknowledges that it may not be amended during the term hereof except by written notification to Pioneer. The Employer further acknowledges that the Plan must always provide a financial incentive for Plan Participants to obtain services from participating providers. It is agreed that Pioneer does not have discretionary authority or discretionary control with respect to management of the funds, and does not render investment or actuarial advice with respect to any money or other property and has not authority or responsibility to do so.

The Employer agrees to defend, indemnify and hold harmless Pioneer, its affiliates and respective directors, officers, employees or agents, for that portion of any liability, settlement and related expense (including the cost of legal defense) reasonably incurred or imposed on it in connection with any claim, action, suit, proceeding, settlement, or compromise thereof, which was caused solely, directly, and independently of all other causes by

Employer's negligence, breach of this Agreement, willful misconduct, criminal misconduct, direct instructions to Pioneer, fraud, or its breach of a fiduciary responsibility in the case of an action under ERISA, related to or arising out of this Agreement or Employer's role as employer or Plan Sponsor.

Pioneer agrees to defend, indemnify, and hold harmless Employer, its affiliates and respective directors, officers, employees (acting in the course of their employment, but not as claimants) and agents, for that portion of any liability, settlement and related expense (including the cost of legal defense) reasonably incurred or imposed on it in connection with any claim, action, suit, proceeding, settlement, or compromise thereof, which was caused solely, directly, and independently of all other causes by Pioneer's negligence, breach of this Agreement, willful misconduct, criminal misconduct, or fraud, related to or arising out of this Agreement.

11.  **Self-Funded Benefits.**  This Plan is funded exclusively by Employer and participating employee contributions.  Benefits hereunder are payable only if, and to the extent, any such contributions are sufficient to pay related expenses and/or insurance premiums required to maintain excess risk insurance.

Employer agrees that it shall inform Pioneer immediately of the cancellation of or reduction in the amount of such insurance.  Employer shall, at all times, remain responsible for providing funds sufficient to pay such insurance premiums as well as Plan benefits.

12.  **Assignment.**  Neither party may assign its rights or obligations hereunder, except as specifically provided herein, without the prior written consent of the other.  Notwithstanding the foregoing, Pioneer may assign this Agreement to any of its affiliated companies.

13.  **Notices.**  All notices affecting this Agreement shall be in writing and delivered by hand or by certified mail, return receipt requested.  Notices to Pioneer shall be directed to it at 330 Whitney Avenue, 8th Floor, Holyoke, MA 01040; Attention: Mr. Paul L. Broughton, Jr. President; to the Employer at Sterling Engineering Corporation, Route 44, Winsted, CT 06098; ATTN: Joe Lavieri, Corporate Secretary, or at such other address as the parties may from time to time designate in writing.

14.  **Modification.**  No provision of this Agreement may be modified, except by written agreement signed by the parties hereto.

15.  **Controlling Law.**  The validity, interpretation, and performance of this Agreement shall be controlled and construed under the laws of the Commonwealth of Massachusetts.

16.  **Binding Effect.**  This Agreement shall be binding upon the parties hereto and their successors and assigns.

FEB- 1-00 TUE 3:44 PM   PIONEER ADMIN. SALES   FAX NO. 413 534 5280   P. 8

17. **Entire Agreement.** This Agreement contains the entire understanding between the parties and supersedes any prior understanding and agreements between the parties, whether written or oral, respecting the subject matter of this Agreement.

IN WITNESS THEREOF, the parties hereto have caused this Agreement to be duly executed..

Sterling Engineering Corporation

By: *Joseph L Lavier Jr*   Secretary
Its Duly Authorized Signator
Joe Lavieri

2-1-2000
Date

Pioneer Management Systems, Inc.

By: _____
Its Duly Authorized President
Paul L. Broughton, Jr.

_____
Date

M:\BRIAN\STERLING.WPD

FEB- 1-00 TUE 3:46 PM   PIONEER ADMIN, SALES   FAX NO. 413 554 5280   P. 10